## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TERRY GIDEON,                          )
                                       )
        Plaintiff,                     )
                                       )
        v.                             )        **Civil Action No. 07-40E**
                                       )
NATIONWIDE MUTUAL FIRE                 )
INSURANCE COMPANY et al.,              )
                                       )
        Defendants,                    )

## OPINION

Pending before the Court is the Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)

filed by Defendant Nationwide Mutual Fire Insurance Company ("Defendant" or "Nationwide")

[Doc. #2].[1] In its Motion, Defendant seeks the dismissal of the Complaint filed against it by

Plaintiff Terry Gideon. Plaintiff has sued Defendant for both breach of contract and statutory bad

faith pursuant to 42 Pa.C.S.A. §8371. Plaintiff's Complaint alleges that Nationwide's conduct

after Nationwide had a reasonable opportunity to investigate a lawsuit filed against Plaintiff by a

third party, including Nationwide's continued pursuit of a Declaratory Judgment Action to trial,

and its failure to settle promptly the underlying lawsuit at an August 2005 settlement conference,

breached Nationwide's contract with Plaintiff and constituted bad faith as set forth in 42

Pa.C.S.A. §8371. For the reasons set forth below, Defendant's Motion to Dismiss is denied.

---

[1] Defendant Nationwide Mutual Fire Insurance Company states in its Motion to Dismiss
that it is incorrectly named as Nationwide Mutual Insurance Company, Nationwide, Nationwide
Insurance, and Nationwide Insurance Companies.

## I. STANDARD OF REVIEW.

The applicable standard of review in deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is as follows. "[w]e are required to accept as true all factual allegations in the complaint ant draw all inferences from the facts alleged in the light most favorable to the plaintiff." Haspel v. State Farm Mutual Automobile Insurance Company, 241 Fed.Appx. 837, 2007 WL 2030272, *1 (3d Cir. July 16, 2007), citing, Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003). Further, "in considering whether the complaint survives a motion to dismiss, we review whether it 'contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." Id., quoting, Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1969, 17 L.Ed.2d 929 (May 21, 2007), quoting, Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984), cert. den'd, 470 U.S. 1054, 105 S.Ct. 1758 (1985)). Thus, a complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S.Ct. at 1974.

## II. RELEVANT FACTS.

Accepting as true all factual allegations pleaded in the Complaint and drawing all reasonable inferences in favor of Plaintiff, the non-moving party, following are the factual allegations and reasonable inferences therefrom relevant to Defendant's motion to dismiss.

At all relevant times, Plaintiff was insured under a homeowners policy that was issued by Defendant. Complaint, ¶ 5. Contained within said policy was the following exclusion:

> 1. **Coverage E- Personal Liability, and Coverage F - Medical Payments to Others** do not apply to bodily injury or property damage:

2

a. which is expected or intended by the inured.

Complaint, Exhibit A, p. 13.

On or about May 26, 2002 Plaintiff fired a handgun. Complaint, ¶ 6. A bullet(s) from the

handgun struck Aaron Fitzsimmons. As a result, on or about December 20, 2002, Fitzsimmons

instituted a lawsuit against Plaintiff ("the Underlying Lawsuit"). Complaint, ¶ 7. The Complaint

in the Underlying Lawsuit alleged claims for negligence, battery and punitive damages against

Plaintiff. Complaint, Exhibit B.

Defendant was informed by Plaintiff of the Underlying Lawsuit. On January 17, 2003,

Defendant sent a Reservation of Rights letter to Plaintiff. Complaint, Exhibit C. In the letter

Defendant stated in relevant part:

> The reported facts give rise to some potential coverage questions under the
> NATIONWIDE MUTUAL FIRE INSURANCE COMPANY policy. The potential
> coverage question being investigated concern an exclusion on page 13 of your
> elite II Homeowners Policy 1. Coverage E - Personal Liability, and Coverage F -
> Medical Payments to Others do not apply to bodily injury or property damage: a.
> which is expected or intended by the insured.
>
> The purpose of this letter is to formally notify you that Nationwide Insurance
> Company's willingness to investigate this claim does not constitute a waiver of
> any rights under the policy.
>
> The company's position relative to coverage will be stated upon completion of
> this investigation.

Complaint, Exhibit C.

On or about March 28, 2003, Defendant filed a Declaratory Judgment action against

Plaintiff and Fitzsimmons (the "Declaratory Judgment Action") in the Court of Common Pleas of

McKean County, Pennsylvania seeking:

3

1. A judgment declaring that the defendant, Terry Lynn Gideon acted intentionally in firing the handgun at the defendant, Aaron L. Fitzsimmons and in causing bodily harm to the defendant, Aaron L. Fitzsimmons and, therefore, the defendant, Terry Lynn Gideon, is not entitled to insurance coverage under the Elite II homeowner's policy for any and all claims arising out of the incident on May 26, 2002; and

2. A judgment declaring that the plaintiff, Nationwide Mutual Fire Insurance Company, has no defense or indemnity obligations relative to any claims arising out of the incident which occurred on May 26, 2002 and the subsequent Civil Action Complaint filed in the Court of Common Pleas of McKean County, Pennsylvania at 1834 C.D. 2002.

Complaint, ¶ 11 and Exhibit D. The Complaint further alleged, *inter alia*, that "[o]n or about

May 26, 2002 . . . the defendant, Terry Lynn Gideon fired a handgun at the defendant, Aaron L.

Fitzsimmons . . . ." Exhibit D, ¶ 8. It further alleged: "[i]t is believed, and therefore averred, that

the defendant, Terry Lynn Gideon intentionally fired the handgun at the defendant, Aaron L.

Fitzsimmons thus causing the alleged bodily injury to the defendant, Aaron F. Fitzsimmons . . . ."

Id. at ¶ 12.

On or about May 12, 2003, Defendant filed an Amended Complaint in the Declaratory

Judgment Action. Complaint, ¶ 12 Exhibit E. Defendant alleged that: (1) "[o]n or about May 26,

2002 . . . the defendant, Terry Lynn Gideon fired a handgun at the defendant, Aaron L.

Fitzsimmons . . . ;" and (2) "[i]t is believed, and therefore averred, that the defendant, Terry

Lynn Gideon intentionally fired the handgun at the defendant, Aaron L. Fitzsimmons causing

bodily injury which was expected and/or intended to the defendant, Aaron L. Fitzsimmons . . . ."

Exhibit E to Complaint. ¶¶ 8 and 12. The Amended Complaint sought the same relief as quoted

above with respect to the original Complaint. Exhibit E.

4

On or about January 6 and 7, 2004, the depositions of numerous parties and witnesses were taken as part of both the Declaratory Judgment Action and the Underlying Lawsuit. Complaint, ¶ 14. Counsel for Nationwide would have received their copies of these deposition transcripts on approximately February 9, 2004 because that is the date Plaintiff's counsel received his copies of the deposition transcripts. Complaint, ¶ 15. Thereafter, on or about May 28, 2004, Defendant filed a motion for summary judgment in the Declaratory Judgment Action. Complaint, ¶ 16. On or about July 3, 2004, Defendant filed an amended motion for summary judgment in the Declaratory Judgment Action. Complaint, ¶ 17. On November 24, 2004, the court denied Defendant's motion for summary judgment and amended motion for summary judgment. Complaint, ¶ 19. The basis for the court's denial of the motions was that it could not conclude as a matter of law that Plaintiff intended to shoot Fitzsimmons when he fired three shots from his pistol towards the car in which Fitzsimmons was a passenger. Complaint, Exhibit F, pp. 1 and 3. "There is no question Gideon intended to shoot the pistol. However, whether he intended to harm Fitzsimmons is not so clear and free from doubt as to justify entry of summary judgment." Id. at p. 6.

Thereafter, on or about December 27, 2004, Defendant filed a Motion for Leave to file a Second Amended Complaint in the Declaratory Judgment Action. Complaint, ¶ 20. The proposed Second Amended Complaint alleged a new theory of exclusion, specifically that the actions of Plaintiff were not an "occurrence" under the policy. Complaint, ¶ 20. The court granted Defendant's motion to amend and Defendant filed its Second Amended Complaint on or about March 25, 2005. Complaint, ¶ 21.

On August 31, 2005, a settlement conference was held. Complaint, ¶ 22. Defendant made no offer to settle either the Underlying Action or the Declaratory Judgment Action, even though Plaintiff offered to contribute to any settlement and Fitzsimmons lowered his demand below the policy limits of the Nationwide policy at issue. Id.

The Declaratory Judgment Action went to trial on February 6, 2006, with the limited issue to be decided by the jury being whether Plaintiff intended to shoot Fitzsimmons. Complaint, ¶ 24. On February 7, 2006, by a 12-0 verdict, the jury found that Plaintiff did not intend to shoot Fitzsimmons. Id. Based upon the jury's finding, the Court entered an Order in the Declaratory Judgment Action which directed Nationwide to provide coverage for Plaintiff in the Underlying Lawsuit. Id. Ultimately, a judgment in the Declaratory Judgment Action was entered in favor of Plaintiff and against Defendant. Complaint, ¶ 25.

Because Defendant was seeking to relieve itself of both its indemnity and defense obligations under the policy in regard to the Underlying Lawsuit, Plaintiff had to retain counsel to monitor the defense of the Underlying Lawsuit. Complaint, ¶ 26. Plaintiff also had to retain counsel to defend the Declaratory Judgment Action. Complaint, ¶ 27.

## III. LEGAL ANALYSIS.

### A. Breach of Contract claim.

As stated in Kane v. State Farm Fire & Cas. Co., 841 A.2d 1038 (Pa. Super. December 22, 2003), "to support a claim for breach of contract, 'a plaintiff must plead: 1) the existence of a contract, including its essential terms; 2) a breach of duty imposed by the contract; and 3) resultant damage." Id. at 1042.

6

Plaintiff alleges that Defendant breached its contractual obligations to Plaintiff:

a. In failing to provide indemnity coverage for the acts of Terry Gideon, which acts clearly were not intended to shoot Aaron Fitzsimmons.
b. In failing to settle the Underlying Action promptly, after having had a reasonable opportunity for investigation.
c. In failing to perform a reasonable and timely evaluation of the claim of Aaron Fitzsimmons in the Underlying Lawsuit, after the taking the deposition of its insured, Terry L. Gideon, and others.
d. In engaging in the pattern of conduct designed to frustrate and delay the resolution of the claim of Aaron Fitzsimmons in the Underlying Lawsuit, and thereby forcing its insured, Terry L. Gideon, to incur attorneys fees and costs in defending the Declaratory Judgment Action and in monitoring the Underlying Lawsuit, which Terry Gideon would not have had to incur but for the actions of Nationwide.

Complaint, ¶ 32.

In support of its motion to dismiss Plaintiff's breach of contract claim, Defendant first argues that all of Plaintiff's allegations about contractual duties owed by Defendant must fail as the allegations do not amount to a viable cause of action. Id. Specifically, Defendant first argues that with respect to the breach of contract alleged in paragraph 32a of Plaintiff's Complaint, "Nationwide did indemnify the acts of Terry Gideon when it settled the underlying lawsuit on February 14, 2006." Id. at p. 6. With respect to paragraphs 32b through 32d, Defendant contends first that there cannot be any breach of an express contractual duty because Plaintiff does not reference any specific duties outlined in the insurance policy or conduct from which an express breach could be inferred. Id. Defendant then contends that none of the allegations contained in paragraphs 32b through 32d constitutes a breach of an implied duty of good faith and fair dealing under the insurance policy because the cases construing this duty all are based on an insurer's failure to settle third party claims resulting in actual damages being caused to the insured as a

7

direct result of said failure and here, Defendant settled Plaintiff's case, there was no excess verdict entered against Plaintiff, and there were no actual damages incurred as a direct consequence of any alleged delay in settling the underlying third party action. Id. at pp. 6-8. Moreover, Defendant argues that Plaintiff is seeking recovery of his attorney fees in defending the Declaratory Judgment action and fees for personal counsel to monitor the Underlying Lawsuit, and that recovery of attorney fees under the factual scenario present in this case is not permitted under Pennsylvania law. Id. at 8.

Given that this case is before this Court on the basis of diversity jurisdiction and to date, the Pennsylvania Supreme Court has not spoken directly on the issue before us, we must predict how the Pennsylvania Supreme Court would resolve the issue. See Robertson v. Allied Signal, Inc., 914 F.2d 360, 378 (3d Cir. 1990).

The case of Highlands Insurance Group v. Van Buskirk, 1999 WL 377099 (E.D. Pa. June 9, 1999) involved a factual scenario similar to the case now before this Court. In Van Buskirk, as in the present case, the plaintiff was an insurance company who had assumed the defense of the insured defendants with a reservation of rights and then filed a declaratory judgment action seeking a declaration that it was not obligated to defend the plaintiff under her homeowner's insurance policy. Ultimately, the jury determined that the defendants were obligated to defend. Id. at *1. The insureds then requested their attorneys fees for having to defend the declaratory judgment action, arguing that the insurer had acted in bad faith by seeking the declaratory judgment. Id. at *1

The Van Buskirk court succinctly stated the applicable Pennsylvania law with respect to the award of attorneys fees:

8

In Pennsylvania, each party pays its own legal fees unless there is a statutory or contractual obligation or an established exception. Corace v. Balint, 418 Pa. 262, 210 A.2d 882, 887 (Pa. 1965). Attorney fees have been allowed to insureds in Pennsylvania where the insurer refused to defend the insured in bad faith and the insured was required to bring a declaratory judgment action to initiate a defense. Montgomery Ward & Co. v. Pacific Indem. Co., 557 F.2d 51, 59 (3d Cir. 1977); Kelmo Enter. v. Commercial Union Ins., 285 Pa. Super. 13, 426 A.d 680, 683-85 (Pa. Super. 1981).

Id. at *1. The Van Buskirk court then addressed the insurer's argument that "the cases where attorney fees have been allowed in Pennsylvania all have involved an insured that was required to institute a declaratory judgment action when the insurer refused to provide a defense or indemnification. Therefore, Highland argues, it did not act in bad faith because it provided a defense, reserved its rights, and brought this declaratory judgment action." Id. at *2. The Van Buskirk court disagreed with the insurer's argument, holding that an insurer that assumes the defense of the insured with a reservation of rights and then files a declaratory judgment action seeking a declaration that it is not obligated to defend the insured under an insurance policy *can* be held liable for attorney fees incurred by the insured in defending the declaratory judgment action:

Highlands' position would exalt the form of an insurer's denial of a claim over the substance of the claim. Highlands' actions in this matter have properly served to mitigate any damages suffered by the Van Buskirks. *See* Beckwith Mach. Co., v. Travelers Indem. Co., 638 F. Supp. 1179, 1188 (W.D. Pa. 1986) (cost of hiring defense counsel and other defense costs is proper measure of damages when insurer breaches its duty to defend).

Id. at *1-2.

We conclude that if an insurer provides a defense, reserves its rights, and files a declaratory judgment action, said conduct constitutes a denial of an insured's claim. Therefore, if the insurer's conduct is done in bad faith, a plaintiff can sue for breach of an implied duty of

9

good faith and fair dealing and recover attorney fees. See also Kiewit Eastern Co., Inc. v. L.R. Const. Co., Inc. 44 F.3d 1194, 1206 (3d Cir. 1995) (holding "[a]lthough the *Kelmo* court purported to connect its holding to a contract analysis, the holding truly rested on a quasi-tort view that attorneys' fees represent compensation for an insurer's violation of its obligation to act in good faith."); Precision Door Co., Inc. v. Meridian Mut. Ins. Co., 353 F.Supp.2d 543, 556-57 (E.D. Pa. 2005) (stating that although the facts in *Kelmo* involved a party who brought a declaratory judgment action, the reasoning in *Kelmo* indicates that the holding applies to "the prosecution or defense of a declaratory judgment action."). To hold otherwise would allow an insurance company to treat its insured unfairly, such that its insured is forced to hire an attorney in order to receive the benefits of his insurance policy that he is rightfully entitled to, and yet, in the end, not have to pay for the cost of said attorney only because after being ordered by a court to defend said insured, the insurance company pays up. This is conduct that this Court opines the Pennsylvania Supreme Court would not condone. Accordingly, Defendant's motion to dismiss Plaintiff's breach of contract claim for failure to state a claim upon which relief can be granted is denied.

**B. Statutory Bad Faith Claim.**

**1. Whether Plaintiff has stated a claim under 42 Pa.C.S.A. § 8371 upon which relief can be granted.**

Pennsylvania's bad faith insurance statute provides:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made

10

by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A.§ 8371 (2006). Plaintiff's 42 Pa.C.S.A. § 8371 bad faith claim against Defendant is

premised upon the following alleged conduct undertaken by Defendant:

> Nationwide . . . was reckless in the processing, investigation, adjustment and
> analysis of the claim of Aaron Fitzsimmons against [Plaintiff], and otherwise
> exhibited Bad Faith conduct. . . in the following particulars:
>
> a. In failing to provide indemnity coverage for the acts of [Plaintiff], which acts
> clearly were not intended to shoot Aaron Fitzsimmons.
>
> b. In failing to settle the Underlying Action promptly, after having had a
> reasonable opportunity for investigation.
>
> c. In failing to perform a reasonable and timely evaluation of the claim of Aaron
> Fitzsimmons in the Underlying Lawsuit, after taking the deposition of its insured,
> [Plaintiff], and others.
>
> d. In engaging in the pattern of conduct designed to frustrate and delay the
> resolution of the claim of Aaron Fitzsimmons in the Underlying Lawsuit, and
> thereby forcing its insured, [Plaintiff], to incur attorney fees and costs in
> defending the Declaratory Judgment Action and in monitoring the Underlying
> Lawsuit, which [Plaintiff] would not have had to incur but for the actions of
> Nationwide.
>
> e. By failing to adopt and implement reasonable standards for the prompt
> investigation of claims like those of [Plaintiff] in the Underlying Lawsuit arising
> under its insurance policies.
>
> f. In not attempting in good faith to effectuate a prompt, fair and equitable
> settlement of the claim of Aaron Fitzsimmons against [Plaintiff] in the Underlying
> Lawsuit, after the liability of [Defendant] for [Plaintiff's] negligent and/or reckless acts under the poli
>
> g. In failing to make any offer to settle the claim of Aaron Fitzsimmons against
> [Plaintiff], after March 1, 2005, after Nationwide had had a reasonable
> opportunity to review the transcripts of the depositions in the Declaratory
> Judgment Action that had been taken, and, before the trial of the Declaratory
> Judgment Action, and at which time and thereafter Nationwide knew or recklessly
> disregarded evidence showing that the Fitzsimmons' claim had a value and legal

11

merit.

h. In failing to make any offer to settle the claim of Aaron Fitzsimmons against [Plaintiff], at the settlement conference on August 31, 2005, or at any time thereafter and before the trial of the Declaratory Judgment Action, when at such settlement conference Aaron Fitzsimmons offered to reduce his demand below the policy limits and Plaintiff herein, [Plaintiff] offered to contribute to the settlement, and at which time and thereafter Nationwide knew or reckless disregarded evidence showing that the Fitzsimmons' claim had a value and legal merit.

I. In continuing to pursue the Declaratory Judgment Action and taking the case to trial after it had conducted discovery and after it became clear that action could not succeed based on the facts of record.

j. In compelling the Plaintiff to incur unnecessary and costly litigation to defend the Declaratory Judgment Action.

k. In, without reasonable explanation, withholding policy benefits due and owing to Plaintiff, that is indemnity of the claim of Aaron Fitzsimmons.

l. In otherwise acting in a malicious, willful and or oppressive manner in an attempt to oppress the Plaintiff and in contempt of the Plaintiff's rights and interests under the policy.

Complaint, ¶ 34(a) - (l).

Defendant argues that Plaintiff's bad faith claim must be dismissed because: "Nationwide

provided a defense to the plaintiff in the underlying action under a reservation of rights, and filed

the . . . Declaratory Judgment Action to clarify its coverage obligations to the plaintiff. Following

the trial in the Declaratory Judgment Action, Nationwide promptly settled the Underlying

Lawsuit. At no time did Nationwide deny any benefits to plaintiff or demonstrate any bad faith

conduct." Defendant's Supporting Brief, unnumbered page 13.

To the contrary, Plaintiff contends that his Complaint does state a claim for bad faith

pursuant to § 8371: "[i]t is the course of conduct after it had investigated and had the facts of the

Underlying Lawsuit before it, the time when Nationwide knew it could not prevail in the

12

Declaratory Judgment Action, but it persisted in its efforts to avoid indemnification and defense [by continuing to pursue the Declaratory Judgment Action], that constitute bad faith." Plaintiff's Opposition Brief, unnumbered page 17.

In order to establish that an insurer acted with bad faith so as to recover under 42 Pa.C.S.A.§ 8371, a plaintiff must prove by clear and convincing evidence that: (1) the insurer lacked a reasonable basis for denying benefits; and (2) the insurer knew or recklessly disregarded its lack of reasonable basis. Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir.1997), citing, Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa.Super. October 25, 1994), app'l den'd, 540 Pa. 641, 659 A.2d 560 (1995). Because the Pennsylvania Supreme Court has not yet spoken on the precise issue before us, whether an insurer who assumes the defense of its insured under a reservation of rights, files a declaratory judgment action seeking a declaration that it is not obligated to defend or indemnify its insured is, and then even when it is clear than it should be defending and indemnifying the insured continues in its quest for a declaratory judgment, rather than settling the case, is, in fact, denying a claim for benefits, we must predict how the Pennsylvania Supreme Court would resolve the issue. See Robertson, *supra*. Consistent with our analysis above with respect to Plaintiff's breach of contract claim, we find that in such a situation, the Pennsylvania Supreme Court would find that an insurance company who so acts is, in fact, denying a claim for benefits. See UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 506 (3d Cir. 2004), citing O'Donnell v. Allstate Insurance Company, 734 A.2d 901, 904 (Pa. Super. 1999) (explaining that "[w]hile the alleged bad faith need not be limited to the literal act of denying a claim . . . the essence of a bad faith claim must be the unreasonable and intentional (or reckless) denial of benefits.");

13

Highlands Insurance Group v. Van Buskirk, *supra.*, (holding that insurer who had provided a defense, reserved its rights, and brought a declaratory judgment action had denied the insured's claim).

Having found Defendant's actions to qualify as a denial of benefits, we further conclude that the Pennsylvania Supreme Court would find that Plaintiff has set forth allegations in his Complaint that if proven by clear and convincing evidence, would establish a §8371 claim against Defendant. See O'Donnell ex. rel Mitro v. Allstate Ins. Co., 734 A.2d 901 (Pa. Super. June 30, 1999), (holding "[g]enerally, success in bringing a claim of bad faith requires the insured to present clear and convincing evidence that 'the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim. It is now clear, however, that section 8371 is not restricted to an insurer's bad faith in denying a claim. An action for bad faith may also extend to the insurer's investigative practices." Id. at 906 (citation omitted); Greene v. United Services Auto. Ass'n, 936 A.2d 1178, 1187 (Pa. Super. November 20, 2007) (same); Sawyer v. Fireman's Fund Ins. Co., 2006 WL 167814, *8 (M.D. Pa. January 20, 2006) (holding "'[g]enerally, to make out a bad faith claim a plaintiff must show by clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of reasonable basis in denying a claim.' It is now clear, however, that section 8371 is not restricted to an insurer's bad faith in denying a claim. An action for bad faith may also extend to the insurer's investigative practices."); Little Souls Inc. v. State Auto Mut. Ins. Co., 2004 WL 503538, *4 (E.D. Pa. March 15, 2004) (opining that "[w]hile it is true the filing of a declaratory judgment alone cannot sustain an action for bad faith, the plaintiff may use that as

14

part of its case to prove bad faith. Just because the filing alone does not prove bad faith, the filing in conjunction with other evidence may.").

In so holding, we acknowledge the decision of the court in <u>Daniel P. Fuss Builders-Contractors Inc. v. Assur. Co. of America</u>, 2006 WL 2372226, *5 (Aug. 11, 2006) (holding "[u]nder Pennsylvania law, the Court finds that there is no recognized cause of action against an insured for delaying settlement of a third party claim"). We simply disagree with the analysis of the issue by our sister court.

## B. Statute of limitations argument.

Defendant also contends that if Plaintiff has stated a claim upon which relief can be granted under 42 Pa.C.S.A. § 8371, his § 8371 claim is precluded by the applicable statute of limitations. In <u>Ash v. Continental Ins. Co.</u>, 593 Pa. 523, 932 A.2d 877 (2007), the Pennsylvania Supreme Court recently held that "an action under § 8371 is a statutorily-created tort action and we therefore hold such an action is subject to the two-year statute of limitations under 42 Pa.C.S. § 5524." <u>Id</u>. at 884. Therefore, the issue before us is whether Plaintiff filed his § 8371 claim against Defendant within two years of the time the cause of action accrued.

Defendant contends that Plaintiff did not timely file his cause of action because he did not file it within two years of the time Defendant filed the Declaratory Judgment Action against Plaintiff on March 28, 2003. Defendant's Supporting Brief, unnumbered page 14. Plaintiff contends that he timely filed his bad faith claim because the limitations period did not begin to run on the claim until on or about February 9, 2005, when the Defendant would have received and reviewed the various deposition transcripts that clearly showed that Plaintiff did not intend to shoot Fitzsimmons. Plaintiff's Opposition Brief, p. 18.

15

The Court cannot conclude at this early point in the litigation that Plaintiff knew or should have known at the time Defendant filed the Declaratory Judgment Action that Defendant was acting in bad faith towards Plaintiff. Accordingly, Defendant's Motion to Dismiss Plaintiff's 42 Pa.C.S.A. § 8371 bad faith claim based upon a statute of limitations argument is denied. Said denial is without prejudice for Defendant to raise this argument at a later, appropriate, time through a motion for summary judgment.

An appropriate Order will follow.

March **20**, 2008

*Maurice B. Cohill, Jr.*

Maurice B. Cohill, Jr.
Senior District Court Judge